Mr. Foster. Good morning. I'm Rick Foster. I represent Greg Gentner in this case. And I'd like to start. Now, are there two appellants in this case? There are two appellants. Mr. Brasler? What is that? Yes, sir. And Juan Shardia is here. All right. And he's representative. I intend to take the first six minutes and then some rebuttal time. Yes. But we have two appeals here. Correct. And on the briefs, which were consolidated, I prepared issues one, three, and four of the appellant's issues. And those are what I intend to argue today. I don't intend to argue too much unless the court has questions on issue one. But three and four, I think it's very important for the court to realize that this was a trial with really just one contested issue. And that was the willfulness of these two executives' conduct in not paying the taxes on time, which there was no dispute that that is what happened. Trust fund taxes. That's correct. These are withholding taxes by employer that you're obliged to file and send to the Internal Revenue Service. That's right. And they were paid quite late, but they were paid. And the allegations were that they were not. They include not only taxes, but Social Security and Medicare and all that kind of stuff. That's correct. They're withholdings. They're funds of the employees. That's correct. And that's why they're called trust fund. The employer is the trustee for those funds. Yes. I remember when I was the prosecutor for a while, when I was the head prosecutor, they used to come up with programs to emphasize prosecution of these kinds of cases. 941 cases, I think. That's the form, right? That is correct. Go ahead. I'm sorry. That's fine. And there is no doubt in this case that the taxes were not paid on time. What the issue was at trial was whether it was willful. And that's because, I think like many of these cases, but this was a struggling company. An idea that these executives thought was a great idea and was going to make a lot of, they were going to have a lot of customers and a lot of money. And that didn't end up happening. And when they ended up with a large tax liability, they ultimately got charged criminally. They did get charged criminally considerably after. They were warned and warned and warned and warned. And they said they were going to do it better and they were going to do it right. They hired somebody to help them out and they never did do it. That is the government's position. That is not exactly what the defendants testified to. So it is not their position entirely, although they do not dispute that they did not do it on time. And they do not dispute that there was some delay that probably they are responsible for. But their position was and still is that they were trying. They were what? They were trying to make the company work. They were trying. They were actually then borrowing the trust fund money to use on behalf of the company. That is essentially. Which is, which is, we used to call it, again, going back to my experience, they were stealing from the trust fund and using it for their own use and for the company's use. That, of course, was the government's position at trial. Well, that's a justifiable position. Sounded like he just admitted it. He said the judge asked you, did he take it from the trust fund? So like, I guess it's like a lawyer's trust fund. You take something from that trust fund. I don't want to use the word stealing, but you're really misappropriating it. That's fair. Stealing would be. I've made closing arguments and call it stealing. I'll say that. I have made closing arguments to juries and said this is stealing. As did the government in this case. I suspect they did that in this was whether, well, stealing for one, I think, would be putting it in their pocket, which there is not any evidence in this case that that's what was happening. The company made some money. There's allegations that it made quite a bit of money. And the individuals paid themselves rather substantial monies. They did. They also paid. Was it any time before they made this final payment, did they ever pay anything? Yes. Not a lot, but yes. When did they pay it? During during the times that it was. Give me the time because I'm looking at the evidence here and when I'm phrasing down the years they pay, maybe tell me what year did they pay something they paid inadequately or insufficiently in 2014, 2015 and I think maybe 2016 as well. And then they paid in its entirety in 2021 or 2020. What the issue I'd like to address is the what what what is the what was the basis for the charge here that led to the sentence? What years were 20? 14, 15 and 16 or 15, 16 and 17. And the charge kind of important. I want to know. You said 14, 15 and 16. Yes. And which of those years did they pay some? I think they paid a little bit in all of them, but they paid twice. Definitely once in response to a lien. But they did. They did pay twice and I think three times in those years. What did they pay? Tens of thousands of dollars when they owed hundreds of thousands of dollars. I notice my time is up, but I don't ask for six I understand. I will. I will be back. You are dividing the time. He said he says you have. I think your partner said you have his time. Okay, well, the jury instructions which we contend were misleading and confusing. The reason we contend they're misleading and confusing is because the judge which which instruction are you referring to? We're referring to the instructions as a whole. Specifically, we need to know which one regarding right now regarding what can't just be the whole instructions were bad. I mean, which instruction was the instruction on willfulness and the good faith defense as they apply to the failure to pay trust fund taxes counts and what the court did on those prior to trial. The defendants requested instructions which didn't mention the facts at trial at all and just gave the law. The government requested jury instructions, which specifically instructed the jury that they could consider those facts at trial, which the government thought benefited them the most and frankly, probably did. And that was when the judge was making about make you objected to the instruction and offered alternate instruction. There was no specific objection made to the pretrial filing of the government other than the fact that the pretrial submission of the defense was quite different. Was there a timely objection? We believe that the pretrial submission is there a timely objection? We don't think there was one, but it was there. And that was that was the fact that they said, These are the instructions we want. The government said these are the instructions we want and then when the court said, we're going to use the government's, but we're not going to use some of yours. They did say they didn't agree with it. They also, unfortunately, a lot of who is the trial counsel. Okay, but they did not object. You were not the trial counsel. I was not the trial counsel. There's no objection. That's the question. There was no the word. The words I object to that instruction did not have words and it kind of what you know, cases all over the place that you've got to say I object. I mean, it's pretty simple. We try to make that simple for you. Oh, I understand. Not not just well, you didn't take mine and they took those. So, yeah, you know, object. So that doesn't work. Well, there are there are two. Well, maybe if you read it literally, that rule is pretty tough on the defendant. We used to interpret it that it means that the objections to instructions need to be made after the instructions were given to the jury, but before the jury deliberates, which means a lot of courts don't do it that way. But the jury got their instructions. They're basically sent out and told to wait. And then the judge gives the lawyers a chance to object to the instructions as given to see if there need to be fixed or corrected. And then if they do, you bring it back in and get corrected instructions. Then they deliberate. But lots of courts just let them do it before trial or do it during the trial and that kind of stuff. And but that rule is if it's applied strictly, it's pretty tough. That is true. And in that case, you are correct. There was no contemporaneous objection. We believe that even if the pretrial request is not deemed by this court to be a contemporaneous objection. But if you give it, but if we accord you, you preserved it. If we say we agree you did preserve it, then there's got to be something wrong with it. Right. That's material. And Judge Cogburn has tried multiple cases like this, both as a trial judge and as a lawyer. And he knows all about instructions. And you have to show us there's some prejudicial error. Well, that's an uphill battle. It is. However, what Judge Cogburn clearly did do in this case is commented on, gave specific instructions to consider evidence that was particularly damaging to the defendants on the willfulness question without giving a concomitant instruction to consider evidence given at trial that was helpful to the defendants on the willfulness question. It is our argument that that combination made the willfulness and good faith instructions, as I said, confusing and misleading, sufficient to require a new instructions that say nothing about which evidence at trial should be considered on the issue at willfulness, or say both, which evidence at trial can be considered that might be helpful to the government and evidence at trial that can be considered that might be helpful to the defense. And what was done instead at this trial was there was specific instructions that they may consider evidence that the government asked for because it was particularly helpful to the government. And they did... You don't claim that was an error of law, right? The statement about willfulness? No, we do not contend that there was any individual misstatement of law with one exception that, as the government pointed out, was largely corrected at the end of the jury instructions. Our argument is that the instructions as a whole were confusing and misleading. And now I think I'm about to use up all of Mr. Chartier's time. So I will... Unless the court has any other questions, I will reserve the rest for rebuttal. All right, sir. You're entitled to do that. Mr. Poole? Good morning. May it please the court. Jason Poole for the United States. So I think there's a simple way for this court to dispose of four of the five issues here, and that is that defendants have either waived their arguments or failed to meet their burden on plain error. So other than the new trial motion, all of the other four issues they have raised in this case were issues that they did not object to timely below and do not even attempt to show plain error in their briefing on. I think the court can find that all four of those issues, therefore, are waived for failing to make an argument on the second, third, and fourth prongs of plain error. And at a minimum, they have failed to meet their burden of showing plain error, which, of course, is their burden to carry all four of those issues. In particular, with respect to... So you claim that everything they raise is reviewed for plain error? Other than the new trial motion, Your Honor. Other than the new trial motion. They made a new trial motion that was denied. Correct, Your Honor. And that is... So that's preserved. That's reserved, Your Honor, reviewed for abuse of discretion. The other four this court reviews at most for plain error. Is the basis for the new trial motion preserved? Yes, Your Honor. I believe the arguments that they've made in their new trial motion, the arguments they make on appeal, are the same ones. So I do agree that those arguments are before the court properly, although they are reviewed for abuse of discretion. What about the arguments where they didn't even ask for plain error review in their opening brief? Those are the other four arguments, and we would argue those are waived because by failing to ask to recognize plain error, by failing to make any argument about any of the prongs of plain error aside from simply assuming that the question was preserved, they have failed to make any argument on the second through fourth prong. So we would submit that this court can decide all four of those as having been waived for failing to assert or argue plain error. And that disposes of all of them for the same reason. So what's left for you to argue? Sorry? What's left for you to argue? Not much, Your Honor, other than to recommend that that is the approach this court should take here. Although I will just note in particular, since with respect to the jury instructions argument, counsel asserts that you should take their initial submission of instructions as being sufficient. As I believe Judge Winn, as you pointed out, many court cases from this court, Cowden in particular, we cite in our briefs, state that you have to object once the instructions are actually given. And here, not only was there no objection, all of these instructions were the ones that they actually agreed to. So there's invited error here. Literally every issue at the jury instruction conference, the defendants either agreed to the final language or they had an objection which the court upheld and changed the instructions to what they wanted. So these entire jury instructions are ones that, again, they got everything they wanted out of that conference. So at a minimum, on those, you have invited error as well. Is, I mean, not to quibble, but is agreeing with an instruction, like somebody else proposes an instruction, the court says this is what I'm going to give. They don't object. That's not really invited error, is it? Isn't invited error if they proposed the instruction themselves? They said, like, please give this language. So largely agree with that, Your Honor. I think here the issues in the instructions they point to are, however, points where they either told the judge affirmatively with respect to the willfulness instruction. Judge, we think this accurately states the law. And there were two sentences before that portion that they wanted the court to remove. And the court removed those two. Now, if they had just stood silent, I would agree. Then it would just be a question of plain error for a failure to object. But by affirmatively telling the district court, we want you to change this language, but we think the rest of this language is correct and states the law, that should be invited error because they are then affirmatively agreeing and urging the court, this is what the instruction should look like. So that's the distinction we draw there. And the contention that you make about plain error, do you think or take the position, you the governor, that all those should be resolved on the first prong of the plain error test? Well, I think our first position is that the court shouldn't need to reach this at all because the court should find that they have simply waived them by failing to argue plain error. If you were to nonetheless— But there were at least two of them that were preserved. That's the point he's making. The new trial argument has been preserved. So on the new trial motion, we agree that— What about the good faith instruction? It seems like there might have been an objection to that. So same. On that one, Your Honor, this is one where there was a discussion where there was an objection originally raised by the defendant saying we want some additional language about the belief of the defendants does not need to be reasonable, which is part of the tax cheat standard. And the government agreed we're not going to object to that. We agree you should insert some language. The language they used was then drawn from the defense's proposed instructions, and the defendants agreed, yes, we would like this language included. And so, again, I think that is not objected to, but also, again, an invited error issue as well. And the judge gave a good faith instruction. He did, Your Honor. And so I think, again, they got everything. Everything at the conference they told the judge they wanted, they got. You don't confess any error, and you don't argue any harmless error? No, Your Honor. All right. And so to the question of how we'd like this resolved, again, I think the simplest way for these are waiver. The new trial one is preserved, but in there the judge did not abuse his discretion. And I think so for that one you would resolve on the merits, but it's straightforward that the court had the matter before it, considered the standard, decided it did not meet that standard. Unless there's any further questions? In that case, we ask this court to affirm. Thank you, Your Honor. Thank you very much, sir. Mr. Charnick. Your Honor, may it please the court, Juan Chartier on behalf of Richard Brasser. Your Honor, there are five issues on appeal. Issue five only applies to Mr. Brasser, and it had to do with his sentencing. But since he was released two days ago, we want to remove that and dismiss that as an issue for the court because it's no longer. It's moot. He was released two days ago. So let me address my issue, issue two, on the IRS voluntary disclosure program. Your Honor is correct that the two defendants did not pay on time, but they did pay. And under the IRS voluntary disclosure program, the IRS vets them, they disclose everything, and they come to an agreement where they can pay the trust funds over time, and which they did. There's no dispute to that. But you have to also remember. So the government got its money. Got its money. Did they get interest? They got all their money. Did they get penalties? Yes. But they got it late. They got it late. And the individuals got their withholding tax turned over to the government. Yes, absolutely. But years late. Correct, but before they were indicted. The government was paid before they were indicted. But the government said the trust fund taxes were paid right before the proffer, but there were still some other taxes that weren't paid. Isn't that right? The ones they were holding in trust, but then the ones on their own. The company has to do its own payment, and that that wasn't made. I was in Tri-Council. I read the record. My understanding is all the trust funds were paid. This is why they were essentially blindsided when the government indicted them after the fact. Also, you've got to remember that they were charged with two separate and very serious charges. Well, they were indicted for years that weren't subject to the voluntary disclosure program. No, they were indicted for tax evasion. Yes, for quarters that weren't subject to the voluntary disclosure program. Correct. Right. And two counts of making a false tax return. They were acquitted on both those counts. On all three counts by a jury. Why? Because the judge gave the proper jury instruction. He didn't. Let Mr. Foster continue. I'll hit this point because the jury instruction that Judge Cogburn did on the failure to pay the trust fund has an instruction on willfulness. Now, under the IRS Voluntary Disclosure Program, you can make certain payments and then pay them later. It's not necessarily willful. Technically, it's willful, but there are exceptions to that. And with that, I reserve my time and allow my counsel to finish on that point. I think you all are out of time, aren't you? He still has four minutes, Your Honor. Okay. Yeah, Mr. Foster is safe. Yeah. I don't think I'll take the whole four minutes, but thank you.  He's got four minutes. I do want to address briefly the new trial issue. And that is at post-trial, both defendants made a motion for a Rule 29 motion for acquittal and a Rule 33 motion for a new trial. In the same order, the district court denied them both. And we think made pretty clear that he considered the same arguments as to both the Rule 29 motion and the Rule 33 motion. Because you made the same arguments, right? Yes and no. The factual basis for both arguments was similar, although not exactly the same. But the legal analysis is a little bit different, and the defendants made that pretty clear, I believe, in their post-trial motion. And most of the factors, there was one line in the Rule 33 denial about some cooperation with the IRS that the court made. So the court did consider at least a little bit that argument on Rule 33 about the cooperation. But the full payment of taxes did not seem to be considered at all on the Rule 33 motion. The, shall I say, sacrifices that particularly Mr. Gettner, but both Mr. Gettner and Mr. Brasser made while that was going on in the mid-2010s. In terms of downsizing the company, downsizing their own salary, although we admit they did not zero it out. But they did actually do some of the, and argued this in the Rule 33 motion. And argued that the judge should find that the interest of justice required a new trial. The judge did not appear to consider those arguments at all. If he did, he certainly didn't make that clear in his order. The only language regarding what he considered in that order was the single line that there was some cooperation with the IRS. And that was outweighed by other factors, which he did not identify. And that's why they did not meet the high hurdle to get a Rule 33 relief. Unless the court has any other questions, I think I'm done. Thank you very much, Mr. Foster. Thank you. Thank you. You've used up all your time there. There's no idea of it. Thank you very much. We'll come down and re-counsel. And before that, we want to adjourn court for the day. This honorable court stands adjourned, sign die. God save the United States and this honorable court.
judges: Robert B. King, James Andrew Wynn, Allison J. Rushing